UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Los Altos Boots, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Rob Bonta, et al.,<br><br>    Defendants. | No. 2:21-cv-01652-KJM-CKD<br><br>ORDER |

California's Legislature recently amended Penal Code section 653o. *See* 2019 Cal. Legis. Serv. Ch. 767 (A.B. 1260) (West). Under that amendment, beginning on January 1, 2022, it will be "unlawful to import into this state for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part or product thereof, of an iguana, skink, caiman, hippopotamus, or a Teju, Ring, or Nile lizard." Cal. Penal Code § 653o(c); *see also id.* § 653r.[1] This case is about products made from caiman leather. Several businesses that sell these products have brought this suit and assert the new state law conflicts with federal laws and regulations that

/////

---

[1] "Notwithstanding the provisions of Section 3 of Chapter 1557 of the Statutes of 1970, it shall be unlawful to possess with intent to sell, or to sell, within this state, after June 1, 1972, the dead body, or any part or product thereof, of any fish, bird, amphibian, reptile, or mammal specified in Section 653o or 653p. Violation of this section constitutes a misdemeanor." Cal. Penal Code § 653r (line breaks omitted).

1

permit the sale of some caiman products. *See generally* Compl., ECF No. 1. Federal law also expressly voids any contrary state restrictions. *See* 16 U.S.C. § 1535(f).

The matter is now before the court on the businesses' request that this court enjoin the caiman prohibition while their lawsuit is pending. *See generally* Mot. Prelim. Inj., ECF No. 16. As explained below, the plaintiffs are likely to succeed in their claim that the caiman ban is void. If the law goes into effect while the case is pending, they will most likely lose business and may be forced to relocate or even dissolve. These harms are irreparable; California would likely be immune to any claim for compensatory damages. Because the balance of equities and public interest weigh in favor of a preliminary injunction, the motion is **granted**.

**I.  BACKGROUND**

California Penal Code section 653o has long prohibited trade in specific animal products. For example, section 653o(a) has banned elephant products since 1976. *See* 1976 Cal. Stat. 1696. For decades, federal courts have enjoined portions of section 653o that conflict with federal laws and regulations. In 1979, a judge of this court permanently enjoined the state from enforcing its ban on alligator hides, and that injunction has never been lifted. *See generally Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979). In 1983, the Ninth Circuit affirmed judgments from this court and the United States District Court for the Northern District of California declaring that the state's ban on elephant products was preempted. *See generally Man Hing Ivory & Imports, Inc. v. Deukmejian*, 702 F.2d 760 (9th Cir. 1983); *H.J. Justin & Sons, Inc. v. Deukmejian*, 702 F.2d 758 (9th Cir. 1983) (per curiam). And just last year, this court issued a preliminary injunction barring the state from enforcing its ban on trade in American alligator, saltwater crocodile, and Nile crocodile products. *See generally April in Paris v. Becerra*, 494 F. Supp. 3d 756 (E.D. Cal. 2020).

The reasoning behind each of these decisions is essentially the same. It begins with section 6(f) of the federal Endangered Species Act. That section expressly preempts restrictions on trade in endangered and threatened species if the restrictions "may effectively (1) permit what is prohibited by this chapter or by any regulation which implements this chapter, or (2) prohibit what is authorized pursuant to an exemption or permit provided for in this chapter or in any

regulation which implements this chapter." 16 U.S.C. § 1535(f).[2] Federal regulations implementing the Endangered Species Act ordinarily prohibit trade in endangered and threatened species, but the regulations also create exemptions. *See, e.g.*, *Man Hing*, 702 F.2d at 763–64. Among these exemptions, for example, is a regulation that permits certain "activities involving threatened crocodilians." 50 C.F.R. § 17.42(c)(3). If a business complies with all other relevant restrictions and regulations, then it may trade in "threatened crocodilian skins, parts, and products without a threatened species permit." *Id.*[3] As a result, if a state law would prohibit trading in threatened crocodilian "skins, parts and products," and if the trades would be permitted by the federal regulatory exemption, then the state law is expressly preempted by section 6(f) of the Endangered Species Act. *See Man Hing*, 702 F.2d at 763–65; *April in Paris*, 494 F. Supp. 3d at 767–69; *Fouke*, 463 F. Supp. at 1144–45.

The plaintiffs in this action rely on the same rationale. Each trades in caiman products. Caimans are among the "threatened crocodilians" referenced in the federal regulations above. *See* 50 C.F.R. § 17.42(c)(1)(i).[4] Some of the plaintiffs are businesses that import and sell boots

---

[2] "Any State law or regulation which applies with respect to the importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species is void to the extent that it may effectively (1) permit what is prohibited by this chapter or by any regulation which implements this chapter, or (2) prohibit what is authorized pursuant to an exemption or permit provided for in this chapter or in any regulation which implements this chapter. This chapter shall not otherwise be construed to void any State law or regulation which is intended to conserve migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife. Any State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter or in any regulation which implements this chapter but not less restrictive than the prohibitions so defined." 16 U.S.C. § 1535(f).

[3] "What activities involving threatened crocodilians are allowed by this rule? Except as provided in (c)(2)(i), you may import, export, or re-export, or sell or offer for sale, deliver, receive, carry, transport, or ship in interstate or foreign commerce and in the course of a commercial activity, threatened crocodilian skins, parts, and products without a threatened species permit otherwise required under § 17.32 provided the requirements of parts 13, 14, and 23 of this subchapter and the requirements of paragraphs (c)(3) and (4) of this section have been met." 50 C.F.R. § 17.42(c)(3).

[4] "Threatened crocodilian means any live or dead specimen of the following species: (A) Broad-snouted caiman (Caiman latirostris) originating in Argentina; (B) Brown caiman (Caiman crocodilus fuscus, including Caiman crocodilus chiapasius); (C) Common caiman (Caiman crocodilus crocodilus); (D) Yacare caiman (Caiman yacare); (E) Nile crocodile (Crocodylus niloticus); and (F) Saltwater crocodile (Crocodylus porosus) originating in Australia

3

and other leather products in California, including caiman-hide boots and belts. *See* Compl. ¶¶ 13–15, 17, ECF No. 1; R. Avila Decl. ¶ 1, ECF No. 16-2; H. Avila Decl. ¶ 1; ECF No. 16-3; Downes Decl. ¶ 1, ECF No. 16-4; Trachter Decl. ¶¶ 1, 4, ECF No. 16-6. Others are leather distributors and wholesalers from outside California who sell caiman hides to manufacturers and other businesses, who in turn sell many of their final products in California. *See* Compl. ¶¶ 16, 18–19; Larson Decl. ¶¶ 1, 4, ECF No. 16-5; Ghacham Decl. ¶¶ 1–2, ECF No. 16-7; Valadez Decl. ¶¶ 1, 4, ECF No. 16-8. Plaintiffs filed this lawsuit against the California Attorney General and the Director of the California Department of Fish and Wildlife, both in their official capacities. *See* Compl. ¶¶ 20–21. They assert one claim for declaratory and injunctive relief, *see id.* ¶¶ 49–57, and now move for a preliminary injunction, *see generally* Mot. Prelim. Inj., ECF No. 16; Mem., ECF No. 16-1. The state opposes. *See generally* Opp'n, ECF No. 27. Briefing is now complete. *See* Reply, ECF No. 30. The court submitted the matter after a hearing by videoconference on October 29, 2021. Hr'g Mins., ECF No. 31. David Frulla, Christopher Hughes and Bret Sparks appeared for the plaintiffs. Ali Karaouni and Gwynne Hunter appeared for the state.

## II.    JURISDICTION

The state first argues the plaintiffs lack standing and their claim is unripe because the possibility of enforcement is minimal; the amendment has not yet gone into effect. *See* Opp'n at 3–5. "Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). The court considers the state's jurisdictional arguments together.

There are two lenses through which the court could view the plaintiffs' claims: as claims that the state's law has imposed an economic burden on their businesses already and will impose a greater burden when it goes into effect, or as a preemptive strike to ward off a criminal

---

(also referred to as Australian saltwater crocodile)." 50 C.F.R. § 17.42(c)(1)(i) (line breaks omitted).

1  prosecution.  The court is satisfied the plaintiffs have standing and can pursue ripe claims under
2  both theories.
3        First, if the plaintiffs will comply with the amended law starting January 1, they have
4  standing based on the harms they would likely suffer as a result.  They have alleged and have
5  offered declarations showing they will incur higher costs if section 653o goes into effect.  For
6  example, if caiman products cannot be imported into California, the plaintiffs might be forced to
7  pay to relocate their businesses to another state, or their businesses may be unsustainable
8  altogether.  *See, e.g.*, R. Avila Decl. ¶ 2; H. Avila Decl. ¶ 2; Downes Decl. ¶¶ 2, 5; Trachter Decl.
9  ¶ 2; Ghacham Decl. ¶ 2.  At least one of the plaintiffs already has begun reducing orders and
10 inventories in anticipation of the law's effects, and consumer demand has already dropped.
11 Downes Decl. ¶¶ 4–5.  The plaintiffs would incur these concrete and imminent harms if they
12 complied with section 653o(c).  They have satisfied the first element of the three-part test for
13 standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Although the severity of these
14 harms might vary depending on how others—such as customers or suppliers—might respond to
15 the new law, there is no question that at least some increased costs would be "fairly traceable" to
16 the amendment and not a third party.  *Id.* (alterations omitted) (quoting *Simon v. Eastern Ky.*
17 *Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)).  The plaintiffs' allegations and evidence thus
18 satisfy the second element of the standing test.  *See id.*  Finally, an injunction or declaratory relief
19 would very likely prevent the plaintiffs from incurring greater costs, relocating or dissolving and
20 thus redress the alleged harm.  *See id.* at 561.  All three elements of the standing test would be
21 satisfied if the plaintiffs elect to comply with the law.
22       As the plaintiffs argue, the Ninth Circuit's decision in *National Audubon Society, Inc. v.*
23 *Davis* supports their position.  *See* Reply at 1–4 (citing 307 F.3d 835 (9th Cir. 2002)).  In that
24 case, California had made it "generally illegal to trap fur-bearing and non-game animals with
25 commonly used traps and to buy, sell, or exchange the fur of mammals that [had] been captured
26 with these traps." 307 F.3d at 843.  Two trappers associations and several individual trappers
27 challenged this ban because it harmed trapping businesses, *see id.*, and the National Audubon
28 Society and four similar organizations challenged the ban based on the likelihood it would lead to

a greater number of bird kills by un-trapped predators, *see id.* at 844–45. The Ninth Circuit held that federal courts had jurisdiction over both claims. *See id.* at 848–51, 855–58. In concluding the claims were ripe, the Circuit found that both plaintiffs had identified current, concrete injuries: "financial losses incurred from the prohibition on trapping" and "the very real threat of loss of birds and other wildlife." *Id.* at 850, 856.

Given the amendments to section 653o, the same can be said of businesses who sell caiman products. At least one of them has already begun reducing business in caiman products and reports a drop in demand. *See, e.g.*, Downes Decl. ¶¶ 4–5. Other harms are imminent. *See, e.g.*, R. Avila Decl. ¶ 5 ("[A]fter learning of the proposed caiman ban, I began planning a relocation of my business to the neighboring state of Nevada. . . . [O]ver 500 of our customers reside in California.").

The defense would distinguish this case from *Audubon* based on the effective date of section 653o(c). The trapping rules in *Audubon* were already in effect, whereas the amendment to 653o will not take effect until January 1, 2022. *See* 307 F.3d at 842–43. The court does not find that difference meaningful here. As noted, at least one plaintiff claims to have incurred harms already, and others allege they will soon be forced to incur costs if the law goes into effect. The controversy is neither uncertain nor hypothetical.

The plaintiffs might also elect not to comply with the amendment to section 653o. If so, they could seek relief in this action preemptively. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Federal courts have jurisdiction over such pre-enforcement challenges when plaintiffs show they are facing "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). An "actual and well-founded fear that the law will be enforced" can be enough. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). Speculative fears, by contrast, are not. *Babbitt*, 442 U.S. at 298 (citing *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

When a court's jurisdiction over a pre-enforcement challenge is in doubt, the "analysis starts with [the Ninth Circuit's] en banc decision in *Thomas*." *Humanitarian L. Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1142 (9th Cir. 2009) (citing 220 F.3d 1134). In *Thomas*, the

Circuit listed three factors to consider when deciding whether a threat of prosecution creates a true "case" or "controversy" over which a federal court can exercise jurisdiction: (1) "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question," (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) "the history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139 (quoting *San Diego Cty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126–27 (9th Cir. 1996)). The court must consider the circumstances as they were "at the time that the complaint was filed." *Scott v. Pasadena Unif. Sch. Dist.*, 306 F.3d 646, 655 (9th Cir. 2002).

These factors are not a checklist of prerequisites. As the Supreme Court has said, "The difference between an abstract question and a 'case or controversy' is one of degree, . . . and is not discernible by any precise test." *Babbitt*, 442 U.S. at 297. One factor might hang heavy in the balance in some cases, and in others, it might have little weight. *Compare, e.g.*, *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764, 773–74 (9th Cir. 2006) (holding plaintiff lacked standing because government had not specifically threatened prosecution), *with, e.g.*, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1016 n.5 (9th Cir. 2013) ("[W]e have never held that a specific threat is necessary to demonstrate standing.").

The plaintiffs' allegations here show they have standing to pursue a pre-enforcement challenge and their challenge is ripe. First, they have described a "concrete plan" to violate section 653o. Their "current business practices" are "'presently in conflict'" with the amended Penal Code. *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (quoting *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1237 (9th Cir. 2018)), *cert. pet. docketed*, No. 21-194 (Aug. 11, 2021). To be sure, the plaintiffs have not predicted exactly how many California customers might order caiman products after January 1, 2022, or which products these customers might buy and when, but that relatively minimal uncertainty does not deprive them of standing or render their claims unripe. *See, e.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1123 (9th Cir. 2009). As summarized above, plaintiffs have made allegations and submitted evidence with specifics about the value of their past caiman sales to California customers, and these sales would be "direct violations of the challenged rules" after January 1, 2022. *Id.*

Second, section 653o does "not regulate expressive activity," so plaintiffs cannot rely solely on allegations of "self-censorship" or a subjective chilling effect to prove a "well-founded fear of enforcement." *Humanitarian L. Project*, 578 F.3d at 1143. Nor have the plaintiffs cited a specific threat of prosecution. But a specific threat is not a prerequisite to federal jurisdiction, *see Valle del Sol*, 732 F.3d at 1016 n.5, and California has not disavowed enforcement, which is "strong evidence" of a "credible threat," *Cal. Trucking Ass'n*, 996 F.3d at 653; *see also*, *e.g.*, *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018) (holding plaintiff had standing in part because California had "not suggested" challenged law would "not be enforced if plaintiffs (or others) decide to violate" it); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (collecting authority to show "[c]ourts have also considered the Government's failure to disavow application of the challenged provision as a factor in favor of a finding of standing"). When a state "has not suggested that the newly enacted law will not be enforced," and the record suggests "no reason to assume otherwise," a plaintiff may have "an actual and well-founded fear that the law will be enforced against them." *Am. Booksellers Ass'n*, 484 U.S. at 393.

Third, "the history of enforcement . . . has 'little weight,'" when, as here, "the challenged law is 'relatively new and the record contains little information as to enforcement or interpretation.'" *Cal. Trucking Ass'n*, 996 F.3d at 653 (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010)). "Courts have found standing where no one had ever been prosecuted under the challenged provision." *LSO*, 205 F.3d at 1155. Even so, California has enforced section 653o in the past, albeit only rarely and not recently. *See People v. K. Sakai Co.*, 56 Cal. App. 3d 531, 533 (1976). Private parties also have more recently enforced section 653o indirectly through the state's Business & Professions Code. *See generally, e.g.*, *Viva! Int'l Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal. 4th 929 (2007); *see also* Cal. Bus. & Prof. Code § 17200. This enforcement history supports the conclusion that the threat of prosecution is not purely speculative.

On balance, the court is satisfied "the parties are sufficiently adverse . . . to present a case or controversy" based on the potential for an enforcement action by the state. *Babbitt*, 442 U.S. at

/////

8

302. There is no dispute the amendment would bring the plaintiffs' current activities within its scope, it was passed relatively recently, and the state has not forsworn prosecution.

Several federal courts, including this court and the Ninth Circuit, have adjudicated similar challenges to section 653o without questioning their jurisdiction to do so. *See Man Hing*, 702 F.2d at 761 n.1; *H.J. Justin*, 702 F.2d at 759–60; *April in Paris*, 494 F. Supp. 3d at 769–70; *Fouke*, 463 F. Supp. at 1144. In the case, the court has jurisdiction. The court therefore moves to the merits of the plaintiffs' motion for a preliminary injunction.

## III. PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy, never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). In determining whether to issue a preliminary injunction, courts must consider (1) whether the moving party "is likely to succeed on the merits" (2) whether it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) whether "the balance of equities tips in [its] favor, and" (4) whether "an injunction is in the public interest." *Id.* at 20. The moving party must show an injunction is warranted by "a clear showing." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation, quotation marks, and emphasis omitted).

The plaintiffs have shown they are likely to succeed on the merits. Their claims mirror those this court recently considered in *April in Paris*: the same Penal Code section is at stake, the same federal statute governs the preemption challenge, the court must interpret the same federal regulations, and the plaintiffs rely on the same theory of preemption. *See* 494 F. Supp. at 765–69 (citing Cal. Penal Code § 653o; 16 U.S.C. § 1535(f); 50 C.F.R. § 17.42; *Man Hing*, 702 F.2d at 761–65). The state also advances the same principal defense in this case as it did in *April in Paris*, i.e., that section 653o applies only to trade within California. *Compare id.* at 765 (summarizing and rejecting this argument) *with* Opp'n at 5 n.3 (acknowledging the similarity of the state's position). As this court explained in *April in Paris*, that argument is unpersuasive. Penal Code 653o expressly bars the importation of caiman products, *see* Cal. Penal Code § 653o(c), so by its own terms, that section "applies with respect to the importation . . . of, or interstate or foreign commerce in, endangered species or threatened species," 16 U.S.C.

9

1   § 1535(f), so it is likely preempted by regulations implementing the Endangered Species Act, *see*
2   494 F. Supp. at 765.

3   The plaintiffs must next show they will likely suffer irreparable harm if section 653o goes
4   into effect on January 1. "Irreparable harm is 'harm for which there is no adequate legal remedy,
5   such as an award for damages.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th
6   Cir. 2021) (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). A
7   plaintiff must show "irreparable harm is *likely*, not just possible, in order to obtain a preliminary
8   injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis
9   in original). The analysis focuses on the irreparability of the injury rather than its "magnitude."
10  *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (quoting *Simula, Inc. v. Autoliv, Inc.*,
11  175 F.3d 716, 725 (9th Cir. 1999)).

12  Economic injuries are not normally irreparable. Damages can remedy most economic
13  harms. *E. Bay Sanctuary Covenant*, 993 F.3d at 677; *see also, e.g.*, *Sampson v. Murray*,
14  415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not
15  usually constitute irreparable injury."). But if parties "cannot typically recover monetary damages
16  flowing from their injury," then "economic harm can be considered irreparable." *E. Bay*
17  *Sanctuary Covenant*, 993 F.3d at 677. That may be true, for example, if the defendant is a state
18  and would be immune to a damages claim under the Eleventh Amendment. *See April in Paris*,
19  494 F. Supp. 3d at 770; *Cal. Hos. Ass'n v. Maxwell–Jolly*, 776 F. Supp. 2d 1129, 1157 (E.D. Cal.
20  2011). Economic damages might also be functionally irreparable if an award would be impossible
21  to quantify and distribute in practice. *See April in Paris*, 494 F. Supp. 3d at 770 ("[T]he economic
22  harm alleged is not confined to a single plaintiff; the harms alleged are likely to be diffuse,
23  industry-wide and difficult to quantify as damages. It appears there would be no way to remedy
24  after the fact the harms plaintiff would suffer without an injunction.").

25  This court relied on these principles when it granted the plaintiffs' motion for a
26  preliminary injunction in *April in Paris*. The plaintiffs had offered evidence of likely harms to
27  their businesses, including "the direct loss of sales of the products at issue and the loss of business
28  relationships and goodwill," "the loss of specialized jobs without transferrable skills," and

"impacts to the system of alligator conservation sustained by revenue from the sales of the animals." 494 F. Supp. 3d at 770.  These injuries were "likely to be sustained as a direct result of the ban should it be allowed to take effect," and were irreparable because damages were likely not available and would be difficult to measure and distribute. *See id.*

The plaintiffs claim they will suffer similarly irreparable harms here.  They have submitted declarations from their founders and owners explaining the injuries they will likely suffer if the caiman products ban goes into effect.  Some will lose hundreds of thousands of dollars in annual sales to hundreds of California customers.  *See* R. Avila Decl. ¶¶ 2, 5; H. Avila Decl. ¶¶ 2, 4; Larson Decl. ¶ 5; Trachter Decl. ¶¶ 4–5; Ghacham Decl. ¶ 2; Valadez Decl. ¶ 4. Some have begun planning to move to other states.  *See* R. Avila Decl. ¶ 2; H. Avila Decl. ¶ 2; Downes Decl. ¶ 5.  Some may be forced to dissolve.  *See* R. Avila Decl. ¶ 2; H. Avila Decl. ¶ 2; Downes Decl. ¶ 2; Trachter Decl. ¶ 2; Ghacham Decl. ¶ 2.  Many of their employees would likely lose their jobs.  *See* R. Avila Decl. ¶ 6; H. Avila Decl. ¶ 5; Trachter Decl. ¶ 6; Valadez Decl. ¶ 6. Some of the employees have specialized skills they have developed over decades, and these skills probably cannot be transferred to other work, even leatherwork with other animal hides, and they would probably not be able to replace their lost income.  Valadez Decl. ¶ 6.  Given the size of the California market for caiman products, the effect of a ban would likely reverberate throughout the whole supply chain, including beyond the United States. *See id.* ¶¶ 1–2, 5.  Additionally, caiman protection efforts are funded by permit programs like those cited in *April in Paris*, 494 F. Supp. 3d at 770, as plaintiffs' counsel represented at oral argument; caiman protection likely also would suffer.  In the circumstances of this case, these harms are irreparable, and the court finds they are likely.

The last two considerations—the balance of harms and public interest—also weigh in favor of a preliminary injunction.  Without injunctive relief, Penal Code 653o(c) will go into effect despite a clear conflict between that section and the Endangered Species Act.  "[T]he public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).  The plaintiffs also are likely to lose business, may be forced to relocate or cease operations, and employees may lose income they cannot replace, as described

11

above. The state, on the other hand, will be prohibited from enforcing a statute "enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). California has a legitimate interest in regulating animal product markets within its borders. *See, e.g.*, *Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1447 (S.D.N.Y.), *aff'd*, 831 F.2d 410 (2d Cir. 1987) (per curiam). But federal law likely voids the state's legislation, and the plaintiffs "have demonstrated a likelihood of serious and far-reaching harm to their businesses." *April in Paris*, 494 F. Supp. 3d at 771. The court declines now, as before, to wade into a policy dispute about whether California's or the United States' wildlife protections are superior. *See id.*

## IV. CONCLUSION

The motion for a preliminary injunction is **granted**. The defendants, their employees, agents, and successors in office are enjoined from enforcing California Penal Code sections 653o(c) and 653r in connection with the importation, possession, or sale of caiman bodies, parts, or products until the final disposition of this case.

The court does not require the plaintiffs to give security. *See* Fed. R. Civ. P. 65(c); *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.").

This order resolves ECF No. 16.

IT IS SO ORDERED.

DATED: November 10, 2021.

CHIEF UNITED STATES DISTRICT JUDGE